Filed 8/25/21  P. v. Walkkein CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B302429 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA479613) |
| v. | |
| JOSEPH LIONEL WALKKEIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stanley Blumenfeld, Judge.  Affirmed.

Patrick J. Hoynoski, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Colleen Tiedeman and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Joseph Lionel Walkkein appeals from his judgment of conviction of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)) with a great bodily injury enhancement (§ 12022.7, subd. (a)).  He raises the following arguments on appeal:  (1) the trial court abused its discretion in denying his motion for mistrial; (2) the prosecutor committed prejudicial misconduct during closing argument; (3) the evidence was insufficient to support the flight instruction given to the jury; and (4) the cumulative effect of these alleged errors requires reversal.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The People's case-in-chief

On the night of December 22, 2018, Jonah Ndiritu was stabbed near a Roscoe's Chicken and Waffles restaurant in Los Angeles.  Ndiritu sold T-shirts and sunglasses outside the restaurant.  Walkkein often played loud music from a boom box in front of Roscoe's and the Denny's restaurant across the street.  Ndiritu had known Walkkein since 2017, and called him by his nickname, "Compton Joe."  The day before the stabbing, Walkkein approached Ndiritu inside Denny's and asked him to leave because Ndiritu had fallen asleep there.

On the night of the stabbing, Ndiritu and Walkkein were both outside Roscoe's.  Walkkein told Ndiritu that he was not allowed to sleep at Denny's because the restaurant was his spot.  As the men argued, Walkkein pulled out a knife and threatened to hurt Ndiritu with it.  In response, Ndiritu smashed Walkkein's

_____

[1] Unless otherwise stated, all statutory references are to the Penal Code.

boom box and began walking across the street. Walkkein followed him with the knife. When Ndiritu realized Walkkein was behind him, he turned and raised his arm to defend himself. Walkkein stabbed Ndiritu in his right arm and chest. As Ndiritu was lying on the ground, he repeatedly pleaded with Walkkein not to kill him. Walkkein then stopped the attack and walked away.

When officers responded to the scene, Ndiritu provided a physical description of his assailant and identified him as Compton Joe. One of the responding officers, who was familiar with Walkkein, saw him standing outside the rear of the Denny's restaurant. During a search of Walkkein, the officer did not find any weapons, or observe any blood on his hands or clothing. Ndiritu later identified Walkkein as the person who stabbed him in a photographic lineup and at trial.

## II.    The defense evidence

Walkkein testified in his own behalf. He stated that on the night of December 22, 2018, he was setting up his music equipment in front of Roscoe's. Ndiritu approached and asked him in a jealous tone if Walkkein enjoyed playing his music. Ndiritu also angrily accused Walkkein of talking about his business behind his back. After Walkkein denied the accusation, Ndiritu stood directly behind him and refused to leave. Walkkein was speaking to a security guard when Ndiritu picked up one of Walkkein's speakers and slammed it down in the middle of the street. Walkkein walked into the street and yelled at Ndiritu that he had another speaker at Denny's. Walkkein was "a little angry" at Ndiritu, but stayed 10 to 15 feet away from him. Walkkein never touched Ndiritu or threatened him with a knife. As Walkkein was walking away, two other men approached

Ndiritu and yelled at him for destroying Walkkein's property. The men also told Ndiritu that they wanted their money. Walkkein did not know Ndiritu had been stabbed until the police arrived and arrested him near Denny's. Walkkein denied telling the police that he had hit and pushed Ndiritu with his hands, that Ndiritu had swung at him and fell, or that he saw Ndiritu bleeding.

### III.   The People's rebuttal evidence

Walkkein was arrested about four minutes after officers received the initial dispatch call regarding the incident. An audio recording of the arresting officer's body camera footage was played for the jury. In the recording, Walkkein spontaneously asked, "Is he gonna be alright?" Walkkein then stated, "I was hitting him with my hand—we pushed each other, and I hit him a couple times, he swung at me and he fell. And I know he was bleeding. I don't have no knife. I pushed him with my hands." Walkkein also claimed the victim became angry because Walkkein had accused him of stealing money from a man named Coco. Walkkein added, "He just went berserk, picked my speaker up—60 or 70 dollars, man—he just—ask anybody—he just busted my shit all up." Prior to Walkkein's statements, the arresting officer did not mention a knife or the fact that the victim was bleeding.

### IV.   Jury verdict and sentencing

The jury found Walkkein guilty of assault with a deadly weapon (§ 245, subd. (a)), and found true the enhancement allegation that he inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). In a bifurcated proceeding, the trial court found Walkkein had suffered four prior serious or violent felony

convictions under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and four prior serious felony convictions under section 667, subdivision (a)(1). The court sentenced Walkkein to an aggregate term of 21 years in state prison.

Walkkein filed a timely appeal.

## DISCUSSION

### I. Denial of motion for mistrial

On appeal, Walkkein argues the trial court abused its discretion in denying his motion for mistrial. He asserts a mistrial should have been granted because the prosecutor improperly appealed to the jury's passions during closing argument by referencing the crime of murder and implying that Walkkein committed the stabbing to satisfy his rage.

#### A. *Relevant proceedings*

During her closing argument, the prosecutor stated, "Mr. Ndiritu begged for his life. Defendant is a Compton Joe. There's only one Compton Joe at this location; that's the defendant. And I want you to think about the following questions or following question: Why did the defendant stop stabbing the victim? You're not actually speculating, you're actually making a conclusion based on facts and evidence." Defense counsel immediately objected to the prosecutor's statement, and the trial court sustained the objection.

The prosecutor then continued, "So victim was pleading for his life. 'Compton, don't kill me.' Perhaps defendant stopped because after stabbing the victim that satisfied his rage because he saw the fear in the victim's eye, his voice, and his body language. Perhaps defendant realized he was about to commit

5

murder." After defense counsel again objected, the trial court sustained the objection and asked the prosecutor to proceed to the next slide in her PowerPoint presentation. When the prosecutor indicated there were no further slides, the court asked her to turn off the presentation. The prosecutor complied, and concluded her argument by stating that Walkkein "chose the route of violence" and stabbed the victim because he "was outraged."

Following the completion of closing arguments, defense counsel moved for a mistrial based on the prosecutor's remarks to the jury about Walkkein's possible reasons for stopping the attack. Defense counsel argued the prosecutor's reference to murder was likely to inflame the passions of the jury, and lacked any relevance to the elements of the charged crime. The court agreed to hear further argument on the motion, and asked defense counsel to submit a proposed curative instruction if he believed one was necessary.

At the hearing on the motion, the trial court indicated that it had interpreted the prosecutor's argument to mean Walkkein "was in a fit of rage and didn't realize fully what he was doing until he saw the victim, the pleading, realized it, and then stopped before his rage would have taken him ultimately to murder." The court stated, "I see no relevance in that argument at all, but I also struggle to see what the prejudice was that the court didn't stop." Defense counsel argued that, because the prosecutor's reference to murder had no relevance to the charged offense or enhancement allegation, it must have been intended to inflame the jury's passions.

The court explained that the jurors were likely to think about the possibility of a fatal injury in light of the evidence that

the victim was stabbed in the chest. The court also observed that the prosecutor's argument could be perceived as a statement that Walkkein "didn't realize what he was doing," he was "not someone who ha[d] murder in his heart," and he was "in a fit of rage and he recognized what he was doing and immediately stopped." While defense counsel acknowledged the argument could be viewed in this manner, he asserted that the prosecutor's tone in making such argument was inflammatory and caused the jury to focus on the possibility that Walkkein could have committed murder. The court disagreed, noting the prosecutor's tone was fairly steady throughout her closing argument, and there was nothing about her tone that undercut the court's interpretation of the challenged remarks. In response to the court's inquiry about a possible curative instruction, defense counsel argued that the resulting prejudice could not be cured by an instruction, and that the proper remedy was to declare a mistrial.

In discussing the relevance of her challenged statements, the prosecutor explained that she was trying to show Walkkein "was in control of the entire situation" and "stopped himself because he did not want to kill the victim." She also stated that her PowerPoint slide asked why Walkkein had stopped stabbing the victim with three options presented: (1) the "victim was pleading for his life, Compton don't kill me"; (2) Walkkein "satisfied his rage because he saw fear in the victim's eyes"; and (3) Walkkein "realized he was about to commit murder and he stopped himself." The court questioned the relevance of this argument, noting that the defense essentially had conceded that an assault with a deadly weapon causing great bodily injury had been committed, and that the key issue before the jury was the

7

identity of the perpetrator. While acknowledging that this was a general intent case, the prosecutor maintained that her comments were aimed at showing Walkkein "knew what he was doing . . . , but he also had no intent to kill the victim." The prosecutor added she was "simply painting" a picture of "the entire evidence and presenting it as [she saw] it to the jury."

The trial court denied the mistrial motion. The court found that, while the prosecutor's argument had no relevance in the context of this case, it was not intended to inflame the passions of the jury. The court further found there was no incurable prejudice because the possibility that the stabbing could have resulted in a murder was "a notion that undoubtedly anyone who looks at the evidence would have in their mind," but it would not prevent the jury from properly focusing on the issue of whether Walkkein was the perpetrator. The court also reasoned that, given the brevity of the challenged remarks and its prompt sustaining of defense counsel's objections, it had no doubt that the jury would not convict Walkkein unless the People had proved he was the perpetrator beyond a reasonable doubt.

## B. *Governing legal principles*

A trial court should grant a motion for mistrial " 'only when a party's chances of receiving a fair trial have been irreparably damaged.' " (*People v. Schultz* (2020) 10 Cal.5th 623, 673.) " ' "A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." ' " (*People v. Suarez* (2020) 10 Cal.5th 116, 148.) We review the denial of a

mistrial motion for abuse of discretion. (*Schultz*, at p. 673; *People v. Penunuri* (2018) 5 Cal.5th 126, 149.)

### C. *The trial court did not abuse its discretion in denying the motion for mistrial.*

Walkkein contends the trial court should have granted his motion for mistrial because the prosecutor's remarks about his possible reasons for stopping the attack irreparably damaged his chances of receiving a fair trial. In particular, Walkkein claims the prosecutor's argument prejudiced the jury against him because it shifted the jury's focus away from the sole disputed issue of identity, and inflamed the jury's passions by implying that Walkkein committed the stabbing in a murderous rage. We conclude the trial court acted well within its discretion in denying the mistrial motion.

When the prosecutor's closing argument is considered as a whole and in context, the challenged remarks were not " 'so incurably prejudicial that a new trial was required.' " (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 634.) The prosecutor's statements about Walkkein's possible reasons for stopping the attack were relatively brief and isolated in nature. The trial court immediately sustained the objections to those statements, and foreclosed any further argument about why Walkkein may have ceased stabbing the victim. When Walkkein later moved for a mistrial, the trial court also offered him the opportunity to submit a proposed curative instruction, which his counsel declined to do.

Walkkein argues the prejudice caused by the prosecutor's comments could not be cured by an admonition or instruction. As the trial court correctly observed, however, the crux of the challenged remarks—that Walkkein may have stopped the attack

9

because he did not intend to kill the victim—was not inherently prejudicial to the defense. Nor was the prosecutor's brief reference to the crime of murder likely to inflame the jury's passions in light of the evidence that the victim was stabbed in the chest and repeatedly pleaded with his assailant not to kill him. Furthermore, the principal disputed issue at trial was Walkkein's identity as the perpetrator, not his mental state or his motive for starting or stopping the attack. Although the prosecutor's remarks were not probative on the key issue of identity, they were unlikely to detract the jury's attention from its role in deciding whether the People had proved beyond a reasonable doubt that Walkkein was the perpetrator. Under these circumstances, the trial court did not abuse its discretion in denying the mistrial motion.

## II. Prosecutorial misconduct claim

Walkkein next contends that the prosecutor's statements during closing argument constituted prejudicial misconduct in violation of his constitutional right to due process. In addition to challenging the prosecutor's remarks about his reasons for stopping the attack, Walkkein claims the prosecutor misstated the evidence when she argued that Walkkein had given multiple versions of events and was outraged at the time of the incident.

### A. *Relevant proceedings*

During her closing argument, the prosecutor argued to the jury that Walkkein had given three different versions of events about his encounter with the victim: (1) the statements he made to the police at the time of his arrest; (2) his testimony on direct examination; and (3) his testimony on cross-examination.

As to the first version, the prosecutor explained that Walkkein had told the arresting officer that he and the victim pushed each other, he hit the victim with his hand, the victim swung at him and fell, he knew the victim was bleeding, and he did not have a knife. The prosecutor also stated that Walkkein had claimed the victim got mad when Walkkein accused him of stealing from a man named Coco.

As to the second version, the prosecutor argued that Walkkein had testified on direct examination that the victim "was jealous" and accused Walkkein of "taking his business," but Walkkein "didn't argue with the victim because [he] is a calm, cool, collected guy with an even temper." As described by the prosecutor, Walkkein tried to emphasize in his direct testimony that he was "not really engaging with the victim" and was "not really angry," even though he admitted at one point that the "argument was escalating." The prosecutor also noted that Walkkein had testified he never touched the victim, and instead saw a Black man attacking the victim as he was walking away.

As to the third version, the prosecutor told the jury that Walkkein had admitted on cross-examination that the victim "was annoying" him, and that Walkkein "was a little angry." The prosecutor also pointed out that Walkkein had testified on cross-examination that he did not argue with the victim, which contradicted his statement on direct examination that their argument had escalated. The prosecutor continued, "And then now he says it was two guys attacking the victim demanding money and accusing the victim of owing them money. What is this a robbery now or some sort of money dispute that he creates during the cross-examination. Two guys attacking the victim.

11

And then he's denied everything about what he said on December 22nd."

The prosecutor then argued that Walkkein's various versions of events were not truthful, "So all three versions are lies. All of them are lies. But version number one shows that defendant was angry. Victim broke his speaker. And all the statements that he made at the time of arrest defendant is really admitting to the following: arguing with the victim, having the knife, causing victim to fall, stabbing the victim while standing over him. [¶] So when the defendant says there was a Black guy standing over him[,] attacking him[,] on top of him, he's really talking about himself. But he wants you to think that it was actually somebody else, not him." The prosecutor concluded her initial argument, stating, "He stabbed the victim because he was angry. He was outraged, and he stabbed him. That's why we're here. I ask that you hold the defendant accountable by finding the defendant guilty of count 1 and finding the allegation of great bodily injury true."

In her rebuttal argument, the prosecutor reiterated that Walkkein had not been truthful in his testimony, asserting, "He exercised all of his rights for this trial. But what he does not have, he does not have the right to take the stand and lie, lie to you all, lie to the judge, especially to you. He does not have the right to lie, get up there and say whatever he wants to avoid accountability, responsibility. Make things up as he goes on. That's why we have the version of direct examination and a different version from cross-examination, because he is making things up as he goes to get out of the responsibility for his conduct[,] for his action that he did."

12

**B.**    *Governing legal principles*

" ' " " 'A prosecutor's misconduct violates the Fourteenth Amendment to the United States Constitution when it "infects the trial with such unfairness as to make the conviction a denial of due process." [Citations.]  In other words, the misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." [Citation.]  A prosecutor's misconduct that does not render a trial fundamentally unfair nevertheless violates California law if it involves "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " ' " (*People v. Hoyt* (2020) 8 Cal.5th 892, 943.)

" 'When attacking the prosecutor's remarks to the jury, the defendant must show' that in the context of the whole argument and the instructions[,] there was ' "a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner." ' " (*People v. Silveria and Travis* (2002) 10 Cal.5th 195, 306.)  Additionally, a " 'defendant's conviction will not be reversed for prosecutorial misconduct . . . unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct.' " (*People v. Flores* (2020) 9 Cal.5th 371, 403.) " ' "To preserve a claim of prosecutorial misconduct for appeal, a defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the improper argument." ' [Citation.]  A court will excuse a defendant's failure to object only if an objection would have been futile or if an admonition would not have cured the harm caused by the misconduct." (*People v. Jackson* (2016) 1 Cal.5th 269, 349.)

13

**C.** ***The prosecutor did not commit prejudicial misconduct.***

Walkkein argues the prosecutor committed misconduct in her closing argument when she (1) speculated about Walkkein's possible reasons for stopping the attack, as described in section I above, and (2) misstated the evidence by claiming that Walkkein gave three different versions of events and was outraged at the time of the attack. As the People correctly assert, Walkkein forfeited his claim that the prosecutor misstated the evidence because he never objected to this portion of the argument or requested an admonition in the trial court. Yet even assuming both claims of prosecutorial misconduct were preserved, we conclude neither has merit.

With respect to the prosecutor's argument about Walkkein's reasons for stopping the attack, there was no prejudicial misconduct. As discussed above, the possibility that the stabbing could have resulted in a fatal injury to the victim was a reasonable inference that the jury could draw from the evidence. In addition, the prosecutor's remarks were not inherently harmful because they implied that Walkkein had no intent to kill the victim during the attack. Because the trial court immediately sustained defense counsel's objections, the comments were also brief and isolated in nature. Under these circumstances, there is no reasonable likelihood that the jury construed the remarks in an objectionable manner.

With respect to the prosecutor's argument that Walkkein lied on the witness stand by giving conflicting versions of events, such remarks were a fair comment on the evidence. It is well-established that prosecutors " 'are allowed "a wide range of descriptive comment" and their " ' "argument may be vigorous

14

as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom." ' " ' " (*People v. Jackson, supra,* 1 Cal.5th at p. 349.) Moreover, " ' "harsh and colorful attacks on the credibility of opposing witnesses are permissible." ' " (*People v. Krebs* (2019) 8 Cal.5th 265, 343.)  A prosecutor is thus " 'allowed to argue, from the evidence, that a witness's testimony is unbelievable, unsound, or even a patent "lie." ' " (*People v. Rivera* (2019) 7 Cal.5th 306, 335; see *People v. Huggins* (2006) 38 Cal.4th 175, 206 [no misconduct where prosecutor told jury defendant " 'lied through his teeth in trying to sell this story to you' "]; *People v. Hinton* (2006) 37 Cal.4th 839, 871 [no misconduct where prosecutor "called defendant a liar based on his admitted lies to the police," and argued defendant "had lied on the stand"].)

Here, the evidence showed that Walkkein spontaneously told the police that, after the victim smashed his speaker, they had a physical altercation during which Walkkein hit and pushed the victim with his hands and saw that the victim was bleeding. This statement directly contradicted Walkkein's trial testimony that he never touched the victim or was aware that the victim had been injured until the police arrested him.  The prosecutor accordingly was entitled to argue that, based on such evidence, Walkkein had lied on the witness stand when he denied he was the perpetrator or had any knowledge about how the stabbing occurred.  The prosecutor was also permitted to argue that, despite his attempts to minimize the anger he felt at the time of the incident, Walkkein was outraged when he committed the stabbing because the victim had destroyed his speaker.

Walkkein argues the prosecution overstated the inconsistencies between his direct and cross-examinations.

15

During both, Walkkein testified that he was only "a little angry" when the victim smashed his speaker, though he acknowledged on cross he was "pretty upset." Walkkein also testified on both direct and cross-examination that there were two men, not one, who confronted the victim about money that he owed as Walkkein was walking away. While Walkkein singles out these consistencies in his testimony to show that the prosecutor misstated the evidence in her closing argument, "we must view the [prosecutor's] statements in the context of the arguments as a whole." (*People v. Valencia* (2008) 43 Cal.4th 268, 304.) The thrust of the prosecutor's argument was that Walkkein was not truthful because his testimony at trial contradicted the statements that he made to the police shortly after the attack. This was a fair comment on Walkkein's credibility as a witness and was therefore permissible.

Finally, even assuming any error, the challenged remarks by the prosecutor did not constitute a pattern of conduct so egregious that it rendered the trial fundamentally unfair, nor was it reasonably probable that Walkkein would have obtained a more favorable result had the remarks not been made. The victim, who was familiar with Walkkein prior to the incident, testified that he was "100 percent sure that Mr. Walkkein is the one who stabbed" him. Walkkein's inculpatory statements to the police, which were played for the jury, also provided compelling evidence of his guilt, and undermined his trial testimony that he never engaged in a physical altercation with the victim. Furthermore, the trial court instructed the jury that the statements of the attorneys were not evidence, and we presume the jury followed this instruction. (*People v. Beck*

16

*and Cruz, supra*, 8 Cal.5th at p. 634.)  On this record, no prejudicial misconduct occurred.

### III.   Jury instruction on flight

The trial court instructed the jury with CALCRIM No. 372 as follows:  "If the defendant fled immediately after the crime was committed or after he was accused of committing the crime, that conduct may show that he was aware of his guilt.  If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct.  However, evidence that the defendant fled cannot prove guilt by itself."  On appeal, Walkkein asserts the trial court erred in giving this instruction because there was insufficient evidence that he left the crime scene under circumstances suggesting he was motivated by a consciousness of guilt.  We conclude the instruction was proper.

#### A.   *Governing legal principles*

"The trial court must instruct the jury 'on general principles of law that are closely and openly connected to the facts and that are necessary for the jury's understanding of the case.'" (*People v. Anderson* (2018) 5 Cal.5th 372, 413.)  "'In general, a flight instruction "is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt." [Citations.]  "'[F]light requires neither the physical act of running nor the reaching of a far-away haven.  [Citation.]  Flight manifestly does require, however, a purpose to avoid being observed or arrested.'" [Citation.]  "*Mere* return to familiar environs from the scene of an alleged crime does not warrant an inference of consciousness of guilt [citations], but the

17

*circumstances* of departure from the crime scene may sometimes do so." ' " (*People v. Cage* (2015) 62 Cal.4th 256, 285.)

### B. *The trial court properly instructed the jury on flight.*

In this case, the evidence was sufficient to support the flight instruction given to the jury. The evidence showed that, prior to the stabbing, Walkkein had set up his music equipment in front of the Roscoe's Chicken and Waffles restaurant. This was one of the spots that he would frequent when he wanted to play music. At some point that night, Walkkein engaged in an argument with the victim, which according to the victim, ended with Walkkein stabbing him and then walking away. While Walkkein denied that he stabbed the victim, he admitted to the police that they were involved in a physical altercation, and that he saw the victim bleeding. The evidence further showed that, following his altercation with the victim, Walkkein did not remain at the scene. Instead, a few minutes after the police received a radio call regarding the incident, the arresting officer spotted Walkkein standing behind the Denny's restaurant that was located on the opposite corner from Roscoe's. From this evidence, the jury reasonably could have inferred that Walkkein left the scene immediately after the crime was committed, and did so to avoid being arrested or observed.

Walkkein argues that his departure from the scene did not warrant an inference of consciousness of guilt because he was merely returning to the familiar environs of Denny's, which was another spot that he would frequent. However, "the prosecution need not prove the defendant in fact fled, i.e., departed the scene to avoid arrest, only that a jury *could* find the defendant fled and permissibly infer a consciousness of guilt from the evidence."

18

(*People v. Bonilla* (2007) 41 Cal.4th 313, 328.)  Here, the jury heard evidence that Walkkein was aware that the victim was injured, but instead of rendering aid or calling for help, he walked away.  (See *People v. Boyce* (2014) 59 Cal.4th 672, 690 [no error in giving flight instruction where neither defendant nor his partner "attempted to render aid or call for assistance" despite knowing victim was in mortal jeopardy]; *Bonilla*, at p. 329 [flight instruction proper where defendant was aware victim had been attacked but "did not call out to him, attempt to aid him, or call for or go for assistance"].)  While the jury could attribute an innocent explanation to Walkkein's conduct, it could also infer that the circumstances surrounding his departure evinced a consciousness of guilt.

Moreover, the instruction did "not require the jury to find that flight occurred or rely on flight as proof of guilty intent." (*People v. Leon* (2015) 61 Cal.4th 569, 607.)  Instead, it allowed the jury to determine "[i]f . . . the defendant fled," and if so, to decide "the meaning and importance of that conduct." Considering the totality of the evidence in this case, the trial court did not err in giving the flight instruction.

## IV.    Cumulative error

Walkkein argues the cumulative effect of the claimed errors deprived him of due process of law and a fair trial.  "Cumulative error is present when the combined effect of the trial court's errors is prejudicial or harmful to the defendant.  [Citations.] Although a defendant is entitled to a fair trial, he or she is not entitled to 'a perfect one.' " (*People v. Capers* (2019) 7 Cal.5th 989, 1017.)  Here, Walkkein received a fair trial and has failed to show any cumulative error requiring reversal of his conviction.

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED.


HILL, J.*

We concur:


EDMON, P. J.


EGERTON, J.

---